LAND, J.
This is a petitory action to recover the Lafreniere Plantation, and to declare the title of the defendant company null and void. This title was acquired on August 27, 1898, by Hunter C. Leake acting as agent of the defendant company at a judicial sale made in certain executory proceedings styled “Hunter C. Leake v. George A. Louque,” in the district court of the parish of Jefferson.
The petition alleges that the said executory proceedings and sale were null and void because the mortgage sought to be enforced had been extinguished by payment of the principal obligation. At'the date of said sale the title.to the plantation stood in the name of the plaintiff, who acquired the same from her husband by a dation en paiement of date July 2, 1897. Plaintiff was actually evicted by the purchaser at the judicial sale about January 1, 1899. -
The case was tried on several exceptions, and a plea or exception of estoppel. For the purposes of the trial, the allegations of the petition were taken for true. By stipulation some documentary evidence was considered in connection with the allegations of the petition. It was further stipulated that if the plea should be overruled on the averments of the petition, and the defendants required to answer, they should have the right to renew the exception of estoppel, and on the trial of the cause on its merits introduce parol evidence in support thereof.
The trial judge sustained the plea or exception of estoppel, but did not pass on the *159 other exceptions, which are substantially as follows:
(1) No attack can be made on the judicial sale in question until the judgment under which it was made is annulled.
(2) All parties to the original judgment are not parties to the suit.
(3) The petition discloses no legal cause of action.
(4) The action is barred by the prescription of one and five years.
The pleadings admit that the mortgage was extinct long before the foreclosure proceedings were instituted. • Executory process is based on the theory that there is a living mortgage to be enforced in accordance with the terms of the contract between the parties. Plaintiff was a stranger to the foreclosure proceedings, and was not bound by them. She was a third possessor of the property, which was seized and sold without any judicial proceeding against her. The mortgage, with its nonalienation clause, was the only legal warrant for the seizure and sale of the property without notice to the third possessor. The mortgage having been extinguished by the payment of the debt, the contract with all its clauses and stipulations ceased to exist. The fact that the inscription of the mortgage oh the records had not been canceled is a matter of no moment. A mortgage is necessarily extinguished by the extinction of the debt. Rev. Civ. Code, arts. 3285, 3411. It needs no citation of authorities to show that an extinguished mortgage cannot be lawfully enforced against a third possessor without notice by a proceeding in rem against the mortgagor.
An order of seizure and sale is so far a judgment as to authorize an appeal, but it is not a judgment in the true and legal sense of the term.
“Such a decree, then, can be viewed only as giving the aid of the officers of justice to execute an obligation which by law produces the effect of a judgment in relation to the particular property mortgaged.” Harrod v. Voorhies’ Administratrix, 16 La. 254.
In Stapelton v. Butterfield, 34 La. Ann. 823, the court said:
“The order of seizure and sale is not a judgment in the legal sense of the term. It adjudicates no rights not conferred by the act of mortgage, and only authorizes the execution of an act importing a confession of judgment, and therefore the action to annul a sale made under executory process is not an action in nullity of judgment. Harrod v. Voorhies, 16 La. 250; Humphreys v. Browne et al., 19 La. Ann. 158.”
The court held that the prescription of one year had no application.
The prescription of five years is restricted to “informalities connected with or growing out of any public sale,” Rev. Oiv. Code, art. 3543. This prescription does not cure radical defects, which are not matters of form. Hickman et al. v. Dawson et al., 33 La. Ann. 442. In that case the nullity was an entire want of assessment, and in this case the nullity is an entire want of a mortgage. See, also, Davenport v. Knox, 34 La. Ann. 407.
Having determined that the judicial sale in question did not divest the title of the plaintiff, we will now proceed to consider the objections urged by the defendants against the legality and validity of the dation en paiement to the plaintiff.
The defendants demur to the petition, and then plead estoppel by conduct. No estoppel by deed is pleaded. It was stipulated that the exception (so called) of estoppel should be presented upon the averments of the petition without the introduction of any parol evidence, and that in case that plea should be overruled, and the defendants required to answer, they should have the right to renew the same, and on the trial of the merits introduce parol evidence in support thereof. It was further stipulated that the record and judgment for separation in the case of plaintiff against her husband and the two dations en paiement referred to in the *161 petition should be considered upon the argument of the exception of no cause of action. As the petition is quite lengthy, a copy thereof is annexed for reference:
To the Honorable the Twenty-Eighth Judicial District Court in and for the Parish of Jefferson:
The petition of Carmelite Pons, duly separated in property from her husband by a judgment of the civil district court for the parish of Orleans, and of George A. Louque, her husband, who joins herein, to aid, authorize, and assist his wife, both citizens of the state of Louisiana, and residents of the parish of Orleans, with respect represents:
That your petitioner, Carmelite Pons, in the year 1892 was the owner and possessor in her own separate paraphernal right of cash and securities exceeding in value the sum of fifty-four thousand dollars, the origin of her title thereto being manual gifts and donations made to her for her separate use and benefit by the late Mrs. B. Saloy, all of which cash and securities she intrusted to and placed in the hands of her husband, George A. Louque, for administration, who expended and used the same for his own purposes in the purchase of property and in other ways.
Petitioner represents that her said husband, George A. Louque, in the discharge of a duty imposed upon him by article 3330 of the Civil Code, and with a view to protect your petitioner’s rights, caused to be entered of record in the parish of Jefferson on the 14th day of August, 1893, his affidavit, dated August 8, 1893, reciting that he had received in his possession from his said wife the sum of fifty-four thousand dollars, her separate and paraphernal property, and that he had invested in his own name the funds of his said wife in purchases of real estate in the parish of Jefferson and of Orleans, and that your petitioner had a legal mortgage to protect her rights on all of the immovable property standing in his name.
Petitioner further represents that, at the date of the recordation of the affidavit aforesaid, her said husband, George A. Louque, owned and was in possession of the “Lafreniere Plantation,” in the said parish of Jefferson, and which plantation the said George A'. Louque acquired by purchase from James Cross Murphy and Robert Jones Perkins, on the 23d day of January, 1892, for the price of thirty-five thousand dollars, one-fourth of which was paid in cash at the time of said purchase, and for the balance of the purchase price thereof, there were delivered to the vendors three notes, each for the sum of eight thousand seven hundred and fifty dollars, bearing interest at the rate of six per cent, per an-num from date until paid, and maturing respectively on January 23, 1893, January 23, 1894, and January 23, 1896; that the property so acquired by said George A. Louque from Murphy and Perkins as aforesaid, and known as the “Lafreniere Plantation,” as aforesaid, and upon which the legal mortgage of your petitioner operated as aforesaid subordinate in rank only to' the unpaid purchase price due by said George A. Louque, as aforesaid, is described in the act of sale from Murphy and Perkins to said George A. Loucpie, in the words and figures following, to wit:
“A certain tract of land known as the ‘La-freniere Plantation’ in the parish of Jefferson, in this state, and composed of the following tracts of land, to wit:
“(1) A tract of land situated in the said parish of Jefferson, Louisiana, at about four miles above the town of Carrollton, and on the same bank of the Mississippi river, measuring about ■fifteen arpents front on said river and extending back between parallel lines to Lake Pontchartrain.
“(2) A lot or tract of land measuring two ar-pents front on said river and running back to said lake.
“(3) Another tract of land measuring one ar-pent front on said river and running back to said lake. The said three tracts of land adjoining each other and composing the said plantation, as aforesaid, through which plantation the New Orleans, Jackson and Great Northern Railroad Company have the right of way.
“Together with all the buildings and improvements thereon, including the sugar-house and machinery thereto belonging; and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in any wise appertaining, and also all the mules, carts, wagons, farming utensils or instruments and implements of husbandry thereon or thereto appertaining.”
Petitioner represents that the note of her husband, George A. Louque, for eight thousand seven hundred and fifty dollars, with accumulated interest thereon, maturing on January 23, 1893, was, at maturity, paid and discharged; that the note for eight thousand seven hundred and fifty dollars, maturing on January 23, 1894, with interest thereon, was, at maturity, paid and discharged ; that the remaining note outstanding of eight thousand seven hundred and fifty dollars, that was due and payable on January 23, 1895, was the only outstanding obligation upon said plantation, which ranked the legal mortgage of your petitioner; that, at the maturity of said note on January 23, 1895, the said George A. Louque applied to the original holders thereof, and who were in possession of said note, and who had never parted with the title thereto, for indulgence in the payment of the same, and that said indulgence was accorded said George A. Louque without extending the term of payment by any act upon the part of the holders of said note; that repeated demands were made by the holders of said note for its payment, and that the said George A. Louque arranged, by the execution of a new mortgage for the sum of fifteen thousand dollars, and the intervention therein of your petitioner subordinating her legal mortgage to the mortgage referred to, to wit, the sum of fifteen thousand dollars, to secure the funds upon said fifteen- *163 thousand dollar mortgage with which to pay and discharge the remaining outstanding vendor’s lien note of eight thousand seven hundred and fifty dollars, then past due. Petitioner avers that she consented to subordinate her said mortgage to the said fifteen thousand dollar mortgage upon the express condition that the proceeds thereof should be used to take up the first mortgage and vendor’s note aforesaid. That the funds were secured upon the said fifteen thousand dollars of mortgage notes from the Bank of Commerce of New Orleans, La., and that said George A. Louque, petitioner’s husband, with the proceeds thus realized in part, on February 19, 1896, paid and discharged the note of eight thousand seven hundred and fifty dollars with accumulated interest thereon, which note was then long past due, and that the payment of the same was made with the money borrowed by your petitioner’s husband upon the fifteen thousand dollar mortgage, as aforesaid, and was paid by his personal cheek to the order or the original holders of said note who, from the time of its issue, had always been in the possession thereof.
Petitioner represents that her claim for the reimbursement by her husband of the sum of fifty-four thousand dollars, entrusted to him, was reduced to the sum of fifty-two thousand dollars, by a payment on account of the entire indebtedness, of the sum of two thousand dollars, which payment is evidenced by a dation en paiement by George A. Louque to your petitioner passed on the 24th of June, 1896, before Peter Stifft, a notary public in the parish of Orleans, and which was duly placed upon the public records, a certified copy of which will be produced on the trial of this case.
Petitioner represents that, owing to the disorder of her husband’s affairs, resulting from his mismanagement, she instituted, on April 22, 1897, in the civil district court for the parish of Orleans, the domicile of her husband and your petitioner, a suit for separation of property ; that she was duly authorized thereto and that, after service of due process, judgment was entered decreeing a dissolution of the community of acquets and gains between your petitioner and her husband, and decreeing further a judgment in favor of your petitioner and against her said husband, in the sum of fifty-two thousand dollars, with interest from judicial demand, and “with lien and privilege on all of the movables belonging to the community and with legal mortgage on all the real property of said defendant, George A. Louque,” all of which will more fully and at large appear by reference to the certified copy of the record in the case of Carmelite Pons vs. George A. Louque, her husband, No. 53,208 of the docket of the civil district court for the parish of Orleans, to be produced on the tidal of this cause.
Petitioner further represents that, in pursuit and execution of her judgment against her said husband, George A. Louque, for the sum of fifty-two thousand dollars, as aforesaid, the said George A. Louque made to your petitioner, on the 2d day of July, 1897, a dation en paiement, in part and partial satisfaction of said judgment for the_ sum of fifty-two thousand dollars, as aforesaid; that said dation embraced and conveyed to your petitioner, as recited therein, a certain tract of land, known as the “Lafreniere Plantation,” situated in the parish of Jefferson, in this state, and composed of the following tracts of land, to wit:
“(1) A tract of land, situate in the said parish of Jefferson, Louisiana, at about four miles above the city of New Orleans, and on the same bank of the Mississippi river, measuring about fifteen arpents front on said river and extending back between parallel lines to Lake Pontchartrain.
“(2) A lot or tract of land measuring two arpents front on said river and running back to said lake.
“(3) Another tract of land, measuring one ar-pent front on said river, and running back to said lake.
“The said three tracts of land adjoining-each other, and composing the said plantation as aforesaid, through which plantation the New Orleans, Jackson and Great Northern Railroad Company have the right of way.
“Together with all the rights, ways, servi-tudes and appurtenances thereunto belonging or in any wise appertaining.
“That strip of land and batture sold to the Illinois Central Railroad Company, per act before Hunter C. Leake, notary public, in this city, on the 19th of December, 1893, and registered in the Parish of Jefferson, Conveyance Book U, folio 593, is excepted from this sale.”
The dation en paiement, and the sale, aforesaid, were made by George A. Louque to your petitioner, and by her accepted, for and in consideration of the price and sum of thirty thousand dollars, “to be deducted from the judgment heretofore mentioned, as part payment thereof,” acknowledgment of which and remittance is by said act given by the purchaser therein. That said act was executed before Emile Pomes, a duly commissioned and qualified notary residing in the parish of Orleans, and that said act was duly recorded in the recorder’s office of the parish of Jefferson and registered in Conveyance Book Y, folio 450, of the records of the parish of Jefferson, on July 3, 1897.
Petitioner further represents that, upon the execution of said act, she went into possession of said premises, and remained in possession thereof until January 1, 1899.
Petitioner represents that, since she acquired title to said property by virtue of the dation and sale aforesaid, she has never incumbered the same, nor has she alienated or disposed of the whole or any part thereof.
Petitioner represents that the Yazoo and Mississippi Valley Railroad Company, a corporation created under the laws of the state of Louisiana, is in physical possession of said property, and asserts ownership thereof and title thereto, in consequence of certain pretended proceedings taken and had in the case of *165 Hunter C. Leake vs. George A. Louque, in the district court for the parish of Jefferson, No. 530 of the docket of said court, filed in said court July 10, 1898.
Petitioner represents that, in the pretended proceeding of Hunter 0. Leake vs. George A. Louque, hereinbefore referred to, the property hereinbefore described and known as the “Laf-reniere Plantation” was adjudicated to the Yazoo and Mississippi Valley Railroad, August 27, 1898, and about January 1, 1899, they evicted your petitioner from said premises under said pretended proceedings, and since that date have held and now hold said plantation, claiming to be the owners thereof under said pretended adjudication.
Now, petitioner represents that the proceedings upon the part of Hunter G. Leake against George A. Louque, aforesaid, were based upon an extinguished and discharged obligation — to wit, the note of eight thousand, seven hundred and fifty dollars — which was paid and discharged on February 19, 1896, long prior to the acquisition of said note by said Hunter 0. Leake, .and that, by the payment bj; the said George A. Louque of the said note, evidencing part of the purchase price (all previous notes having been paid), the vendor’s lien and the mortgage was canceled and discharged; and that said note having been paid and discharged, to the knowledge of said Hunter 0. Leake, proceedings by executory process to secure title to the property were illegal, null and void, and conveyed no title to the Yazoo and Mississippi Valley Railroad, in whose interest and for whose benefit and advantage said Hunter O. Leake was at the time of said proceedings acting as agent; and that the money used for the purchase of ■said extinct obligations, with others to be hereafter referred to, was the money of the Yazoo and Mississippi Valley Railroad, and that Hunter C.' Leake personally had no interest therein and was acting for and on behalf of said Yazoo and Mississippi Valley Railroad. Company, which, upon the proceedings on said discharged obligations attempted to acquire and now asserts title to the property aforesaid.
Petitioner further represents that the two notes aggregating the sum of fifteen thousand dollars (the proceeds of which were partly applied to the payment of the note for eight thousand seven hundred and fifty dollars upon which the executory proceedings hereinbefore referred to were issued) were held as collateral security by the late Bank of Commerce of New Orleans for the reinbursement of the money thus advanced to George A. Louque personally, to pay said note of eight thousand seven hundred and fifty dollars, and for other purposes ; that the said Bank of Commerce was placed, under the orders of the court, in the hands of receivers, and said notes aggregating fifteen thousand dollars, held as collateral security for the purposes aforesaid, came into the possession of the receivers of the said Bank of Commerce. That the notes, aggregating fifteen thousand dollars, as aforesaid, were long past due in the latter part of June, 1898, the time of the attempted acquisition thereof by the said Hunter 0. Leake, acting for the Yazoo and Mississippi Valley Railroad, aforesaid; that, when the said fifteen thousand dollar mortgage notes were delivered as security for the payment of the moneys thus ■ advanced, as aforesaid, there was no written act of pledge executed by the said George A. Louque, or by anyone authorized to represent him, nor was the Bank of Commerce authorized by any act upon the part of said George A. Louque, or anybody representing him, to dispose of said collateral notes given to secure the moneys advanced as and for the purposes aforesaid.
Petitioner further represents that the said note of eight thousand seven hundred and fifty dollars, which was paid by George A. Loúque on February 19, 1896, as aforesaid, was in the possession of the Bank of Commerce and was among its files at the date of its failure, not as an evidence of indebtedness due it, but simply as a voucher to evidence that it had been paid by the moneys advanced to George A. Louque by the certification of his personal check to enable him to pay the same, the notes representing the sum of fifteen thousand dollars secured by mortgage, as aforesaid, being delivered at the same time into the possession of the officers of the Bank of Commerce and being the only security which they held for the reimbursement of the moneys so advanced.
Petitioner further represents that Hunter C. Leake, the representative and agent of 'the Yazoo and Mississippi Valley Railroad, was, or should have been, familiar with all of the transactions of George A. Louque with the Bank of Commerce, the books of said bank being in the custody of the receivers thereof and open at all times to his inspection and examination, and particularly so when dealing with past due paper, leaving open at all times to the maker thereof, and to all others affected thereby, the equities with reference to said paper, as commercial papei-, and in connection with the mortgages, the negotiation of which are not protected by the law merchant.
Petitioner further represents that neither Hunter C. Leake, personally, nor in his representative capacity, nor the Yazoo and Mississippi Valley Railroad Company, were creditors of George A. Louque or of your petitioner, nor did they have any subordinate claim upon the property owned by your petitioner and subject to a superior mortgage, which they might, under the law, have protected; that they were strangers to the property and to the debt of George A. Louque due to the Bank of Commerce or its receivers, who held the fifteen thousand dollar notes as collateral therefor.
Petitioner further represents that the property owned by your petitioner, as aforesaid, was of great value, and, without regard to the rights of your petitioner, of whose original legal mortgage they had full notice, and of whose title they were fully advised, the Yazoo and Missisippi Valley Railroad determined to get possession of said property at all hazards and with as little expense as possible; that their agent and rep *167 resentative, Hunter O. Leake, with full knowledge of the facts hereinbefore recited, all of which are matters of public record, learning of the existence of this mortgage of fifteen thousand dollars, and which represented only a fraction of the true value of said property, negotiated with the liquidators of the Bank of Commerce to purchase the notes of George A. Louque, and included therein the past-due paid and discharged obligation of eight thousand seven hundred and fifty dollars, with the accumulated interest thereon, which approximated the sum of twelve thousand dollars, and offered to purchase the three notes, describing them in the petition of the liquidators as secured by mortgage, for the total price of fifteen thousand dollars; that the liquidators were evidently persuaded that their only claim was on the fifteen thousand dollar note, inasmuch as they recommended the sale of the three notes for that amount; whereas, if they had believed that the eight thousand five hundred dollar [$8,750] note was still an active and operative debt, the value of the paper would have exceeded twenty-eight thousand dollars, and the property upon which the said mortgage operated was of a value largely in excess of the pretended mortgage indebtedness.
That, even in the sale of the notes as described in the liquidators’ petition, there is no recital of the fact that said Hunter C. Leake, the purchaser thereof, who was acting as a matter of fact in the interest of the Yazoo and Mississippi Valley Railroad, was a creditor of George A. Louque, nor was there any subrogation ■ by the receivers in their official capacities to the mortgages and privileges securing any of the notes purchased by said Hunter O. Leake.
Petitioner further represents that the liquidators were without power or authority, in the absence of a judgment against George A. Louque, to sell or dispose of the mortgage notes of fifteen thousand dollars which were held by the Bank of Commerce without pledge, but as security for the payment of the money advanced by it to George A. Louque, personally, part of it in order to enable him to pay and discharge the obligation of eight thousand seven hundred and fifty dollars, the balance due on the plantation, and which matured on January 25, 1895.
Petitioner further represents, as hereinbefore recited, that she subordinated her legal mortgage to enable her husband, George A. Louque, to secure the funds necessary to discharge and pay the last remaining note due as part of the purchase price of said plantation — to wit, the sum of eight thousand seven hundred and fifty dollars, with accumulated interest thereon — and that he did secure said amount of money, and with the money so obtained paid direct to the holders of said note the full amount that was due thereon, with accumulated interest, the effect of which was to cancel said debt and the vendor’s privilege resulting therefrom, and to leave the estate then owned by George A. Lou-que burdened solely with the fifteen-thousand-dollar mortgage, to which your petitioner assented and next in rank your petitioner’s legal mortgage for the sum of fifty-two thousand dollars. That, even if he had wanted to, and had tried to give vitality to the said paid and discharged note as against the rights of your petitioner, by reissuing the same after he hád paid it, her said husband would have had no legal power so to do; but, as a matter of fact, ber said husband never did issue or attempt to reissue said note.
Petitioner represents that, being advised and knowing that there was no other outstanding mortgage indebtedness operating against said property, she has always believed that the proceedings by which her title to the ownership of’ said property was sought to be divested, were' based upon the two mortgage notes aggregating fifteen thousand dollars, which mortgage act to-secure said notes was passed on January 2,1896, before Francis D. Gharbonnet, a duly qualified' notary, a certified copy of which will be produced on the trial of this case.
Petitioner further represents that, within the' past sixty days, upon the investigation of her counsel of the proceedings in the cause entitled Hunter G. Leake vs. George A. Louque, No. 530 of the district court for the parish of Jefferson, and through which proceedings the Yazoo and Mississippi Valley Railroad Company sought to acquire title to the property of your petitioner, she for the first time learned and discovered that the alleged executory proceedings were not based upon the fifteen thousand dollar mortgage note to which she assented, but were based upon the' discharged and extinguished obligation of George A. Louque for eight thousand seven hundred and fifty dollars, and in the use of said pretended indebtedness as the basis for the executory process issued, and through and under which said Yazoo and Mississippi Valley Railroad Company claims title to the property of your petitioner, the said Hunter O. Leake, acting in said execu-tory proceedings for the use, benefit and advantage of said Yazoo and Mississippi Valley Railroad, who was the adjudicatee of said property through its agent, Hunter C. Leake, abused the court’s process and wronged and injured your petitioner. That the effect of said proceedings is to throw a cloud upon petitioner’s ownership and title to said property, and the said proceedings should be declared null, void and without effect, and the sheriff’s deed and the recorded title thereto upon the records of the parish of Jefferson should be expunged.
Petitioner further represents that she has been deprived of the use and enjoyment of her said property since the 1st of January, 1899, in consequence of the alleged and pretended ownership by the said Yazoo and Mississippi Valley Railroad Company of the same; that, upon their taking possession of said property, they demolished the structures thereon, and were guilty of waste, cutting the cypress timber, and otherwise injuring the property of your petitioner, as well as depriving her of the rents and revenues thereof ; that she reserves herein her right to sue by independent action for the recovery of the rents and revenues of the said property and the losses sustained in consequence of the acts of waste by *169 the Yazoo and Mississippi Valley Railroad Company since its possession of the same, she seeking in this action only to vindicate her title to ■the said property.
Petitioner further represents that while it is true, as a matter of fact, that, in the executory proceedings herein complained of, said Hunter C. Leake was acting as the agent of the Yazoo and Mississippi Valley Railroad Company, it does not appear affirmatively upon the record of said proceedings that he was acting in a representative capacity. That the said proceedings 'being instituted in his own name were apparently for his own use_, benefit and advantage, he ■asserting in his petition that he was the holder .and owner of the obligation described, the basis for executory process in said proceedings; and that, in order to make and render the decree effective herein, and conclude all interests and parties thereto, he should be made a party defendant in this cause. .That, coupled with the petitory action herein, is the action to annul the adjudication made upon the petition of said Hunter G. Leake, and the court under whose •orders said adjudication was made being alone seized of jurisdiction to annul, vacate and set aside the same, said Hunter C. Leake as the plaintiff in said executory proceedings is subject to the jurisdiction of this court and to the decrees to be rendered herein; that Hunter C. Leake is a citizen of this state and a resident of the parish of Orleans, and. should be cited .according to law to appear and answer hereto.
Wherefore, petitioner prays that the Yazoo and Mississippi Valley Railroad Company may be cited to answer this demand through O. M. Dunn, its legal agent, and Hunter C. Leake may also be cited, and, after due proceedings had, that there may be judgment in favor of your petitioner, Carmelite Pons, declaring her -to be the owner of the Lafreniere Plantation, as above described; declaring the pretended adjudication thereof to the Yazoo and Mississippi Valley Railroad Company on August 27, 1898, jn the executory proceedings styled Hunter C. Leake vs. George A. Louque, No. 530 of the docket of the district court for the parish of Jefferson, to be radically null and void and of no effect, ejecting the said defendant from said premises, and reserving to your petitioner the right to claim, in a separate proceeding, the rents and revenues of said property and damages for the waste thereon committed by the said defendant. And petitioner prays for costs and for general relief.
It is urged that the judgment of separation of property is null and void for want of advertisement as required by law. This formality is a matter en pais, and the record is silent on the subject. Besides, a want of publication of a decree of separation of property between husband and wife, unless shown to have been fraudulent and injurious to third persons, is not a cause of absolute nullity. Brown & Learned v. Smythe, 40 La. Ann. 326, 4 South. 300. The further objection that the record shows that the said judgment was not seasonably executed against all the estate of the husband is without force. The plantation was transferred to the wife in part payment of the judgment within 45 days after the decree was signed, and the decree did not become executory until the lapse of 10 clear days thereafter. It has been held that a delay of more than three months in executing such a judgment is not fatal to its continued existence. Fulton v. Fulton, 7 Rob. 73. Theré is no evidence that the two dations did not cover the whole estate of the husband. The contention that the dation in question was void, because the act did not recite that all the property of the husband was conveyed, is not supported by the text of Rev. Civ. Code, art. 242S, which reads as follows:
“The separation of property, although decreed by a court of justice, is null, if it has not yet been executed by the payment of the rights and claims of the wife, made to appear by an authentic act, as far as the estate of the husband can meet them or at least by a bona fide non-interrupted suit to obtain judgment.”
The payments only are required to be evidenced by an authentic act. Any other construction would prevent the wife from receiving partial payments when the husband owned any other property. All of these objections, even if good in law, would not defeat plaintiff’s title. The pleadings admit that the plaintiff had a valid claim of $52,000 against her husband, which had been duly recorded, and operated as a legal mortgage on all his immovables. This being so, the dation was valid, although there was no separation of property. Rev. Civ. Code, art. 2446; Lehman, Abraham & Co. v. Levy, 30 La. Ann. 750.
The contention that plaintiff was not injured by the judicial sale because the defendants held another special mortgage on *171 the property for $15,000 superior in rank to the legal mortgage of the plaintiff is not supported by the record. The petition alleges that $15,000 was but a fraction of the value of the plantation at the date of the sale, and there is nothing in the record to fix its value at the date of the sale, or to show that the price of adjudication was $15,-000. The statement of the trial judge in his written opinion that such was the price does not constitute evidence. According to the allegations of the petition, which are taken for true, the property was purchased in 1892 by George A. Louque for $35,000 on terms, and was conveyed by him in 1S97 to his wife for $30,000 in part satisfaction of her para-phernal claims. The inference from the record is that the plantation in 1898, at the date of the sale, was worth $30,000 or more, and the petition alleges in effect that its value greatly exceeded $15,000.
It may be true, as argued by defendants’ counsel, that the order of seizure and sale and the sale itself concluded George A. Louque, the defendant in the proceeding. Huber v. Jennings-Heywood Oil Company, 111 La. 749, 35 South. 889. The reason for this doctrine is that Louque a party to the suit, duly notified of the plaintiff’s demand, could not after the public adjudication of the property attack the sale on grounds he could have urged on appeal or by injunction. But in the case at bar the plaintiff was no party to the executory proceedings, and was not bound by them. It is also to be noted that the purchaser at the sale was the plaintiff in the foreclosure proceedings. There is certainly no equity in favor of the plaintiff who, as the purchaser of a past due note, forecloses an extinct mortgage against a third possessor without notice, and buys in the property. Such a plaintiff does not stand in the position of an innocent holder of the note or of a bona fide purchaser who is protected by the decree of the court.
In Pertuit v. Damare, 50 La. Ann. 905, 24 South. 681, this court announced that the doctrine Was well settled that a mortgage note once paid could not be reissued by the-maker or any other person, to the detriment or prejudice of third parties.
Defendants further contend that the property was acquired by the plaintiff with the-mortgage of $8,750 resting upon it, as shown by the mortgage certificate annexed to the-dation en paiement and the recitals of the dation en paiement itself, and they argue that, therefore, she cannot now be heard to attack the adjudication based on said mortgage. It is true that at the date of the dation the inscription of the mortgage for $8,750 had not been canceled on the record as shown by the certificate of mortgages. The plaintiff, however, did not assume the payment of this or any other mortgage or lien recited in-the certificate. The transfer was made by the husband “with all lawful warranties against himself and all preceding vendors,” and by the terms of the contract the husband obligated himself “to have canceled and' erased from the books of the mortgage office all of the mortgages, tax liens, and privileges- and the judgment therein recorded.”
The inscription of the mortgage and its-nonerasure are the only facts admitted on the face of the act of dation en paiement.
The law especially authorizes a sale or transfer of property by the husband to the-wife for the replacing of her dotal or other effects alienated or converted by him to his-own use or that of the community. Rev. Civ, Code, art. 2446.
The sale or transfer to the wife authorized by said article necessarily carries with it an implied obligation on the part of the husband: to warrant the wife against eviction. Rev. Oiv. Code, art. 2501. In obligating himself to have canceled or erased from the records all mortgages and liens therein inscribed, the husband did no more than promise to perform a legal duty. The contention that the plaintiff by the dation acquired a mere equity *173 in the property, because she took it subject to existing mortgages upon' it, is not sound. The plantation itself was conveyed to the wife for the price of $30,000. It is true that she could not assume a mortgage debt due by her husband. But she did not do so. As we have seen, the husband, as vendor, was bound in law to warrant the title in the, absence of a contrary stipulation between the parties. This obligation of warranty is incidental to every conveyance of property, and a dation to the wife furnishes no exception to the general rule. The full and complete title was conveyed to the wife. The husband reserved no interest in the property, and the mortgagees, under our laws, had no title of any kind in or to the plantation. It is argued that, if the husband can warrant the title conveyed by him to his wife against mortgages existing at the time, he might thus transfer to his wife property largely exceeding her claims in value. When such a case is presented to the court, it will be time enough to consider it.
The contention that the plaintiff is estop-ped to deny the existence of the mortgage by the certificate of mortgage and by the recitals of deed as to what was shown by'the certificate is without force, because the only facts certified or recited relate solely to inscription and nonerasure.
Defendants’ counsel have argued at length the plea of estoppel and laches. We do not think that these important questions should be decided piecemeal, first on the pleadings, and then on the evidence, if we should overrule the plea. The exception or plea involves matters en pais, and should be tried and determined, once for all, on the pleadings and the evidence that may be adduced.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that all the exceptions filed by the defendants, except the fourth or plea of es-toppel, be overruled, and that this cause be remanded for further proceedings on said ex-éeption, and on the merits according to law, defendants to pay costs.of appeal, and the costs below to abide the final result.