### VIAU v. SEMPREVIVO

(December 10, 1928. Opinion and Decree.)

McLaughlin & West, of New Orleans, attorneys for intervenor, appellant.

W. O. Hart, of New Orleans, attorney for Civil Sheriff.

E. H. McCaleb, of New Orleans, attorney for plaintiff, appellee.

JONES, J. The sole question before this Court is whether plaintiff or third opponent shall pay a keeper's bill of $132.00. To solve the problem, it will be necessary to give a chronological outline of the various proceedings shown by the record.

On November 17, 1925, plaintiff filed a suit for rent for $360.00 and obtained an order of provisional seizure of the furniture in the leased premises. The writ was duly issued and the furniture was seized the same day. On November 23, 1925, the Civil Sheriff filed a return to the writ, stating that the seizure had been released upon defendant's furnishing a bond for $500.00, with a surety acceptable to plaintiff's attorney.

On January 11, 1926, due proof having been made of plaintiff's demand, a judgment was rendered by default against defendant for the full amount thereof and judgment was signed on January 19, 1926. A writ of fieri facias was issued on the same day and defendant was notified that in three days from the service thereof the Sheriff would proceed to sell and advertise the furniture at the residence.

On January 25, 1926, the Max Barnett Furniture Company, Inc., filed a third opposition, claiming that it had a vendor's lien and privilege upon the furniture under a duly recorded chattel mortgage, and it prayed for a separate appraisement and sale of the furniture described in the act of mortgage, with recognition of priority of its lien. On February 3, 1926, after ten days' advertisement, the furniture was sold at the residence of defendant for the price and sum of $213.00. The Sheriff's return shows the following accounting:

"1st. Cash received from attorney for plaintiff as advances for keeping fees and a part of the docket fees _____$121.00
"2nd. Amount realized in sale_____ 213.50
"Costs and charges of suit and sale, including 23 days and 21 nights of keeping _____ 184.83
"Balance which is being held awaiting the final demands of the intervenors _____ 149.67

$334.50"

On March 4, 1926, while its intervention was still pending in the lower court, third opponent filed a rule against plaintiff and the Civil Sheriff to show cause why the entire proceeds of the furniture covered by the chattel mortgage should not be turned over to it. On the 13th day of April, judgment was rendered on the intervention and on the rule.

The priority of third opponent's lien was recognized on the proceeds of the furniture, after all costs and expenses of seizure and sale had been paid out of the funds received. From this decision third opponent has appealed to this Court.

In this Court liability for costs of the separate sale and appraisement is admitted. The only element of the costs disputed is the charge for a keeper of 23 days and 21 nights, amounting to $132.00.

On the trial of the third opposition, the Sheriff, after itemizing his fees, testified as follows:

$121.00 of keeper's fees had been advanced by attorney for plaintiff, who had originally ordered the keeper; that when the attorney for the third opponent first objected to retention of keeper, he had told him that the attorney for plaintiff controlled the writ, and that later, a few days before sale, all parties had agreed that the furniture would sell better on the premises than at the Sheriff's warehouse; that the cost of moving the furniture from the premises to the Sheriff's warehouse would have been almost as much as the keeper's fee for the remaining days before sale that in such cases he frequently allowed furniture to remain on the premises under a keeper, as it brought more there than it did at the Sheriff's warehouse.

Attorney for third opponent argues that the filing of his chattel mortgage in the mortgage office gave plaintiff knowledge of his claim and that the payment of these keeper's fees by the plaintiff was illegal.

If we admit that the chattel mortgage was known to plaintiff when he filed suit, he could not have told how much had been paid on the furniture during the year intervening between the date of the sale and the time suit was brought.

Appellant admits that he is liable for all the costs of separate appraisement and sale of the furniture. Necessarily, this would include the moving from the residence to the Sheriff's warehouse and the storage there, and as the record does not show what these costs would be, it would be impossible for this Court, in the present state of the record, to fix that amount, even if the law or the equities should be found in his favor, but such is not the case.

Appellant does not state clearly his contention. The record apparently shows that part of the keeper's fees was incurred two months before the third opposition was filed and before plaintiff's claim was reduced to judgment.

The placing of a keeper under such circumstances is both economical and sensible and if third opponent considered it illegal, he should have protested more promptly.

The above analysis of the facts and pleadings shows that the equities are by no means with the plaintiff in this matter and a thorough study convinces us that the law is with the defendant.

In the case of Fulton vs. Husband, 7 Rob. 73, the Supreme Court held that all privileges and mortgages existing on property sold under execution, where debtor has no other property to pay his debts, are transferred to its proceeds, the distribution of which must be made as in case of a concursus.

In the case of Bowman vs. McKleroy, 14 La. Ann. 587, where several third opponents with privileges were disputing the distribution of the proceeds of the sale of slaves in the Sheriff's hand, the Supreme Court ordered that all of the costs of the lower court be paid first out of the proceeds.

In the case of Connors vs. Citizens Mutual Insurance Co., 22 La. Ann., 330, the Supreme Court held that the Sheriff was authorized to pay his own costs and those of the clerk of court, who issued the process, out of the funds realized by sale of the property under a writ of fieri

facias, and that the debtor could only claim the surplus after such costs were paid.

These rulings are supported by the following authorities:

Code of Practice, Art. 301; Jamison vs. Barelli, 20 La. Ann. 452; Succession of Forstall, 39 La. Ann. 1052, 3 So. 277; Citizens Bank vs. Tureaud, et al., 40 La. Ann. 149, 3 So. 538.

For above reasons the judgment appealed from is affirmed.